JACOB SHIDAEV (CA SBN 343616)
LAW OFFICES OF JACOB SHIDAEV
15233 Ventura Blvd., Suite 1004
Sherman Oaks, California 91403
Telephone: (424) 558-4141
Email: info@shidaev.com

Attorney for Petitioner
CALVIN GEORGE DIXON

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| CALVIN GEORGE DIXON,<br><br>Petitioner,<br><br>v.<br><br>WARDEN, ADELANTO ICE PROCESSING CENTER; MARKWAYNE MULLIN, Secretary of Homeland Security; and DAVID J. VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement,<br><br>Respondents. | Case No. 5:26-cv-5052<br><br>**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241** |

Petitioner Calvin George Dixon, by and through his attorney of record, respectfully petitions this Court for a writ of habeas corpus. This action challenges only the legality and process of his civil immigration detention. It does not ask this Court to review, vacate, or stay his removal order, decide his appeal, or adjudicate his I-130 or adjustment application.

## INTRODUCTION

1. Mr. Dixon is an admitted noncitizen whom DHS placed in removal proceedings in April 2026 while allowing him to remain at liberty at a known address. He appeared in immigration court, filed a marriage-based immediate-relative petition through his United States citizen wife, and timely appealed the Immigration Judge's July 17, 2026 removal order to the Board of Immigration Appeals ("BIA").

2. The BIA appeal was filed on August 15, 2026 and remains pending. Execution of the removal order is automatically stayed while that merits appeal is pending. 8 C.F.R. § 1003.6(a).

3. On August 21, 2026, local police arrested Mr. Dixon at a Target store. After local authorities released him, ICE officers took him into immigration custody. ICE did so without advance notice, an individualized pre-detention hearing, or a determination by any neutral decisionmaker that detention was necessary. He is confined at the Adelanto ICE Processing Center.

4. DHS had known Mr. Dixon's identity, address, immigration history, and litigation posture for months. The Notice to Appear identifies his address; DHS litigated his removal case; and DHS was served with his BIA appeal. Yet DHS allowed him to remain free until August 21 and then confined him without the process required before depriving him of physical liberty.

5. Mr. Dixon seeks the relief courts in this District routinely enter for this violation: immediate release from custody, restoring the status quo that existed before August 21, together with an order barring re-detention absent a pre-deprivation hearing before a neutral decisionmaker at which the Government bears the burden by clear and convincing evidence.

## JURISDICTION AND VENUE

6. This Court has jurisdiction under 28 U.S.C. §§ 2241 and 1331 and the Suspension and Due Process Clauses. Mr. Dixon is "in custody" within this District.

7. Venue lies in the Eastern Division because Mr. Dixon is confined in San Bernardino County and his immediate custodian is located here. 28 U.S.C. § 1391(e); *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

8. This detention-only claim is independent of review of a removal order. It therefore is not channeled to a petition for review by 8 U.S.C. § 1252(b)(9). *See Jennings v. Rodriguez,* 583 U.S. 281, 292–95 (2018).

## PARTIES

9. Petitioner Calvin George Dixon, A# 256-048-733, is a citizen of India, born in 1989, and presently detained at Adelanto.

10. Respondent Warden of the Adelanto ICE Processing Center is Mr. Dixon's immediate custodian and is sued in the Warden's official capacity.

11. Respondents Secretary Markwayne Mullin and Acting ICE Director David J. Venturella direct and implement federal immigration detention policy and are sued in their official capacities.

## FACTUAL ALLEGATIONS

12. Mr. Dixon was inspected and admitted to the United States at Los Angeles International Airport on February 26, 2018 in O-1 nonimmigrant status. DHS alleges he remained after the authorized period ended. Exs. A, E, and G.

13. DHS issued a Notice to Appear on April 8, 2026, charging removability only for overstaying an admission under INA § 237(a)(1)(B). The notice lists Mr. Dixon's residential address. Exs. A and G.

14. Mr. Dixon and Savannah Lynn Hall, a United States citizen, married in Clark County, Nevada on November 17, 2025. Their certified marriage record and photographs corroborate the marriage. Exs. A, H–J.

15. Ms. Hall filed Form I-130 for Mr. Dixon. USCIS received it on May 2, 2026 and issued receipt number IOE9466320680. Exs. A and B.

16. On July 17, 2026, an Immigration Judge deemed Mr. Dixon's applications abandoned under 8 C.F.R. § 1003.31(h) and ordered removal to India. Ex. A.

17. Through immigration counsel, Mr. Dixon timely filed a BIA appeal on August 15, 2026, challenging the denial of an opportunity to pursue adjustment based on his marriage. The appellate filing included Form I-485 materials for adjudication in remanded proceedings or by USCIS. The appeal remains pending. Ex. A.

18. Under 8 C.F.R. § 1003.6(a), the removal order may not be executed during the appeal. Mr. Dixon accordingly is not detained under 8 U.S.C. § 1231(a).

19. On August 21, 2026, local police arrested Mr. Dixon at a Target store. Local authorities later released him, but ICE officers immediately or shortly thereafter took him into immigration custody. The present record contains no conviction arising from that incident and no DHS charge placing him within 8 U.S.C. § 1226(c).

20. ICE has held Mr. Dixon at Adelanto since August 21. Before taking him into custody, the Government did not provide notice of the asserted need for detention, disclose the evidence supporting detention, or allow a neutral decisionmaker to assess flight risk, danger, or alternatives.

21. Mr. Dixon has substantial ties to Southern California. He lives with his wife, has family responsibilities, participates in the local music and

volunteer community, and has been described by a longtime civic leader as a devoted father, mentor, and community contributor. Exs. C, H–J.

22. Mr. Dixon's pending BIA appeal, marriage-based filings, known residence, and counsel provide strong incentives to appear. Less restrictive measures—including reporting and travel restrictions—can address any legitimate concern.

**LEGAL FRAMEWORK**

23. Detention during removal proceedings for a noncitizen apprehended in the interior proceeds under 8 U.S.C. § 1226(a), which authorizes discretionary arrest and permits release on bond or conditional parole. Section 1225(b)(2)(A) has no application here. Section 1225(a)(1) deems only an "alien present in the United States who has not been admitted" to be an applicant for admission, and "admission" means "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Mr. Dixon was inspected and admitted at Los Angeles International Airport. The Ninth Circuit has confirmed that "[b]ecause § 1226 is not limited to aliens deemed 'applicants for admission,' the aliens subject to § 1226 include other aliens, such as admitted aliens 'who overstay or violate the terms of their visas.'" *Rodriguez Vazquez v. Bostock*, --- F.4th ----, 2026 WL

2196424 (9th Cir. July 30, 2026), slip op. at 15 (quoting *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 499 (5th Cir. 2026)).

24. Freedom from physical restraint lies at the core of the liberty protected by the Due Process Clause. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). What process is due is evaluated under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), considering the private interest, the risk of erroneous deprivation and the value of added safeguards, and the countervailing governmental interest.

25. A noncitizen need not have been detained and released before in order to hold a protected liberty interest in remaining at liberty. District courts in this Circuit have repeatedly held that "the government's knowing decision not to detain an individual creates a liberty interest in their continued release." *Anderson v. Chernut*, No. 26-cv-01960-DAD-CKD, 2026 WL 809990, at *2 (E.D. Cal. Mar. 24, 2026); *accord Kharitonova v. Albarran*, No. 26-cv-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026); *Medrano-Rocha v. Santacruz*, 817 F. Supp. 3d 871, 882–83 (C.D. Cal. 2026); *Ramos-Maldonado v. Semaia*, No. 26-cv-01202-SSS-AS, 2026 WL 790788, at *2 (C.D. Cal. Mar. 18, 2026); *Perez Bueno v. Janecka*, No. 25-cv-03376-CAS-BFM, 2026 WL 309934, at *3–4 (C.D. Cal. Feb. 5, 2026).

**CLAIM FOR RELIEF**

**Fifth Amendment Due Process — Unlawful Detention Without Pre-Deprivation Process**

26. Mr. Dixon incorporates paragraphs 1 through 25.

27. Mr. Dixon possessed a profound liberty interest in remaining free from civil detention. DHS's months-long decision to permit him to live in the community with full knowledge of his identity, address, and immigration history reinforces that interest.

28. The risk of error was intolerably high because ICE was the sole decisionmaker, provided no advance notice or evidence, and afforded no neutral assessment of necessity or alternatives. Respondents have never explained—not to Mr. Dixon at the time of his arrest and not since—what factual basis, if any, supports a finding that he is a flight risk or a danger to the community. A pre-deprivation hearing would have required the Government to produce that evidence and given Mr. Dixon a meaningful opportunity to contest it.

29. The countervailing governmental interest is slight. Custody hearings are routine, and the burden of holding one before rather than after an arrest is minimal. DHS had months in which to seek such process and did not.

30. The August 21 local arrest does not change the analysis. DHS did not learn of Mr. Dixon's presence, identity, or address from that arrest. DHS issued a Notice to Appear listing his residential address in April 2026, litigated

his removal case for months, and was served with his BIA appeal on August 15, 2026. Local authorities released him, and the present record identifies no conviction and no charge placing him within 8 U.S.C. § 1226(c). The arrest therefore gave DHS no new information and created no emergency that made pre-deprivation process impracticable. *Cf. Orozco-Salazar v. Warden Desert View Facility, Adelanto ICE Processing Center*, No. 5:26-cv-04555-KES, Dkt. 13 (C.D. Cal. Aug. 25, 2026) (weighing the absence of evidence that DHS "became newly aware of Petitioner's presence in the U.S. because of, for example, an arrest by state or local criminal authorities").

31. A court in this District recently granted relief on materially indistinguishable facts, ordering the immediate release of a noncitizen whom ICE detained under § 1226(a) after years of known presence without any pre-deprivation process. *Orozco-Salazar v. Warden Desert View Facility, Adelanto ICE Processing Center*, No. 5:26-cv-04555-KES, Dkt. 13 (C.D. Cal. Aug. 25, 2026). The same *Mathews* balance supports relief here.

32. The remedy for this violation is release, not a post-deprivation bond hearing. Release "is narrowly tailored to the specific wrong, because it restores the status quo that was in effect before Respondents violated Petitioner's due process rights," and permitting the Government to cure the violation with a later hearing "would effectively render any holding that a pre-detention hearing is

required meaningless." *Orozco-Salazar v. Warden Desert View Facility, Adelanto ICE Processing Center*, No. 5:26-cv-04555-KES, Dkt. 13 (C.D. Cal. Aug. 25, 2026). *See also Gudavasov v. Marin*, No. 26-cv-00541-AH-MBK, 2026 WL 712827, at *3 (C.D. Cal. Mar. 9, 2026) (collecting cases); *Sachin v. Warden*, No. 26-cv-00707-MWC-ADS, 2026 U.S. Dist. LEXIS 36819, at *9–11 (C.D. Cal. Feb. 21, 2026) (granting a temporary restraining order directing release rather than a post-deprivation bond hearing).

33. Courts in this District have most frequently paired release with prospective injunctive relief barring re-detention absent adequate process. *See Medrano-Rocha*, 817 F. Supp. 3d at 882–83; *Nieves v. Mullin*, No. 5:26-cv-01471-DOC-DSR, 2026 WL 931143, at *4 (C.D. Cal. Apr. 1, 2026); *Fernandez v. Semaia*, No. 25-cv-03412-SPG-MBK, 2026 WL 136229, at *7 (C.D. Cal. Jan. 13, 2026). Mr. Dixon requests the same pairing.

34. Respondents' arrest and continued detention of Mr. Dixon without constitutionally adequate process violate the Fifth Amendment. His custody is unlawful under 28 U.S.C. § 2241.

**EXHAUSTION**

35. Section 2241 contains no statutory exhaustion requirement. Prudential exhaustion does not apply where, as here, a petitioner claims "that he was not afforded constitutionally adequate procedural safeguards prior to the

deprivation of his liberty interest." *R.N.G. v. Semaia*, No. 26-cv-2839-DSR, 2026 WL 2089544, at *3 (C.D. Cal. July 14, 2026). *See also Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017).

36. An immigration-court bond request would not provide the pre-deprivation process Mr. Dixon was denied and cannot decide the constitutional legality of ICE's completed seizure. Exhaustion therefore would be futile and inadequate for this claim.

## REQUEST FOR EXPEDITED CONSIDERATION

37. A court entertaining an application for a writ of habeas corpus "shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted," and the return is due "within three days unless for good cause additional time, not exceeding twenty days, is allowed." 28 U.S.C. § 2243. General Order 26-05 implements that command in this District through a standard scheduling order for § 2241 immigration petitions. Mr. Dixon respectfully requests that the order to show cause and scheduling notice issue promptly.

38. Mr. Dixon does not seek a temporary restraining order at this time. General Order 26-05 provides that applications for temporary restraining orders "should be reserved for cases where the petitioner alleges imminent, irreparable harm that cannot be addressed by the standard scheduling order or by

expediting the briefing schedule." Mr. Dixon intends to proceed under the standard schedule and, if warranted, to meet and confer regarding acceleration. He reserves the right to seek preliminary relief should circumstances change, including if Respondents give notice under General Order 26-05 of an intent to remove him from this District.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Dixon respectfully asks this Court to:

(a) issue the writ, or an order to show cause why the writ should not be granted, 28 U.S.C. § 2243;

(b) declare that his detention without constitutionally adequate process is unlawful;

(c) order Respondents to release him immediately from custody;

(d) order that Respondents shall not re-detain him without first providing a pre-detention hearing before a neutral decisionmaker at which Respondents bear the burden of demonstrating by clear and convincing evidence that (i) he is a flight risk or a danger such that his physical custody is required, or (ii) on account of changed circumstances, there is a significant likelihood that he may be removed in the reasonably foreseeable future;

(e) grant costs and any relief authorized by law, including fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

(f) grant all other just and proper relief.

**EXHIBITS**

A — Relevant excerpts from immigration record, including BIA appeal, I-485 materials, I-130 receipt, IJ order, and NTA

B — Form I-130 filing and USCIS submission confirmation (privacy-redacted)

C — Letter of support from Cathy J. Hood

D–F — Passport and visa/admission records (birth date privacy-redacted where applicable)

G — Notice to Appear image

H — Certified Nevada marriage certificate (birth dates privacy-redacted)

I–J — Marriage photographs

Dated: September 1, 2026

Respectfully submitted,

LAW OFFICES OF JACOB SHIDAEV

By: Jacob Shidaev

JACOB SHIDAEV, SBN 343616
Attorney for Petitioner
Calvin George Dixon

## VERIFICATION

I, Jacob Shidaev, declare as follows:

1. I am an attorney licensed to practice law in the State of California (State Bar No. 343616) and the attorney of record for Petitioner Calvin George Dixon.

2. I submit this verification under 28 U.S.C. § 2242, which provides that an application for a writ of habeas corpus "shall be in writing signed and verified by the person for whose relief it is intended or by someone acting in his behalf." I sign in Mr. Dixon's behalf.

3. Mr. Dixon is confined at the Adelanto ICE Processing Center. Because of his confinement, his signature could not be obtained before filing without delaying this Petition and thereby prolonging the very detention it challenges.

4. I have read the foregoing Verified Petition. The allegations concerning Mr. Dixon's immigration record—including his admission in O-1 status, the Notice to Appear and its charge, the Form I-130 and its receipt number, the Immigration Judge's order, the appeal to the Board of Immigration Appeals, and the certified marriage record—are true and correct based on my review of the documents filed as Exhibits A through J.

5. The remaining factual allegations are true and correct to the best of my knowledge, information, and belief, based on my review of the record and on my communications with Mr. Calvin Dixon and his sister, Ms. Charisma Dixon.

6. Mr. Dixon will execute his own verification of this Petition as soon as counsel can obtain his signature at the facility. Petitioner will file it promptly upon receipt.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 1, 2026, at Sherman Oaks, California.

Jacob Shidaev

JACOB SHIDAEV