**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

CALVIN GEORGE DIXON,

Petitioner,

v.

WARDEN, ADELANTO ICE PROCESSING CENTER, et al.,

Respondents.

Case No. 5:26-cv-05052-DFM

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Calvin George Dixon filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging his civil immigration detention. See Dkt. 1 ("Petition"). Respondents answered, see Dkt. 8 ("Answer"), and Petitioner replied, see Dkt. 10 ("Reply"). Petitioner seeks immediate release because the Government deprived him of his liberty without constitutionally adequate process. He also seeks an injunction governing any future detention. For the reasons set forth below, the Petition is **GRANTED** in part.

## I. BACKGROUND

Petitioner is a citizen of India who was inspected and admitted to the United States on February 26, 2018, in O-1 nonimmigrant status, with authorization to remain until December 15, 2019. See Petition ¶¶ 1, 12; Petition, Ex. G ("NTA") at 2. On April 8, 2026, the Department of Homeland Security ("DHS") issued a Notice to Appear charging Petitioner as removable

solely for overstaying his admission under 8 U.S.C. § 1227(a)(1)(B). See NTA at 2. The NTA identified his Los Angeles residential address. See id..

Petitioner married a United States citizen on November 17, 2025. See Petition ¶ 14; Petition, Ex. H ("Marriage Certificate") at 2. United States Citizenship and Immigration Services ("USCIS") received his wife's Form I-130 petition on May 2, 2026. See Petition, Ex. A ("Immigration Records") at 5.

On July 17, 2026, an Immigration Judge ("IJ") ordered Petitioner removed to India after deeming his applications for relief abandoned for failure to meet a filing deadline. See Immigration Records at 2-3, 23-24. Through immigration counsel, Petitioner filed an appeal with the Board of Immigration Appeals ("BIA") on August 15, 2026, challenging the denial of an opportunity to pursue marriage-based adjustment of status. See id. at 14-19. The appeal papers identified his residence and stated that he was not detained. See id. at 14. The Petition alleges that the appeal remains pending, and the record contains no subsequent BIA decision. See Petition ¶ 17.

On August 21, 2026, local police arrested Petitioner at a Target store. See id. ¶ 19. Local authorities later released him, and Immigration and Customs Enforcement ("ICE") officers immediately or shortly thereafter took him into immigration custody. See id. ICE has held him at the Adelanto ICE Processing Center since that date. See id. ¶ 20. Before taking him into custody, the Government did not provide notice of the asserted need for detention, disclose the supporting evidence, or afford an opportunity for a neutral decisionmaker to assess flight risk, danger, or alternatives to confinement. See id. Respondents do not dispute that account or submit evidence describing the local arrest, ICE's custody decision, or a subsequent bond hearing.

Petitioner alleges that before his detention, he lived with his wife, had family responsibilities, and participated in the local music and volunteer

community. See id. ¶ 21. An attached letter describes him as a devoted father, mentor, music-studio owner, and community volunteer. See id., Ex. C. With the Reply, Petitioner submitted a September 10, 2026 USCIS notice scheduling an October 5, 2026 interview on the I-130 petition and directing both spouses to attend. See Reply, Ex. A ("Interview Notice") at 2.

## II. DISCUSSION

A federal court may grant a writ of habeas corpus to a petitioner "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas jurisdiction extends to noncitizens challenging the lawfulness of their immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001).

The parties proceed under 8 U.S.C. § 1226(a). See Petition ¶¶ 18, 23; Answer at 3. The record supports that classification. Petitioner was admitted, and the NTA charged an overstay. Although the IJ ordered removal, Petitioner filed a timely merits appeal; on the present record, the order has not become administratively final. See 8 C.F.R. §§ 1003.6(a), 1241.1. Respondents identify no applicable ground for mandatory detention under § 1226(c).

### A. Exhaustion Does Not Bar the Petition

Respondents argue that Petitioner must first request a bond hearing before an IJ. See Answer at 4. A noncitizen ordinarily must exhaust administrative custody remedies, including an available BIA appeal, before seeking habeas review. An unexhausted petition ordinarily should be dismissed without prejudice or stayed unless exhaustion is excused, and the petitioner must establish grounds for excusal. See Leonardo v. Crawford, 646 F.3d 1157, 1159-61 (9th Cir. 2011).

The Court excuses exhaustion for the claim presented here. Petitioner does not challenge an IJ's weighing of evidence, a bond amount, or an error that a BIA bond appeal could correct. His sole claim is that, in his

circumstances, the Constitution required process before the Government replaced his established liberty with confinement. An ordinary bond hearing could result in release, but it could not supply the advance process Petitioner claims was required or resolve his constitutional challenge to its omission. See Zhao v. Janecha, No. 26-5025, 2026 WL 2666865, at *3 (C.D. Cal. Sept. 9, 2026) ("The present Petition claims a deprivation of constitutional due process, a claim not within the jurisdiction of the immigration judge or the Board of Immigration Appeals."); Yu v. Giles, No. 26-4692, 2026 WL 2455945, at *3 (C.D. Cal. Aug. 21, 2026) (same); R.N.G. v. Semaia, --- F. Supp. 3d. ---, 2026 WL 2089544, at *3 (C.D. Cal. July 14, 2026) (same).

**B. Procedural Due Process**

The Fifth Amendment Due Process Clause protects "all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent," and "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" the Due Process Clause protects. Zadvydas, 533 U.S. at 690, 693.

In Morrissey v. Brewer, the Supreme Court recognized that the decision to release a person from custody creates "at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," generating a liberty interest that "is valuable and must be seen as within the protection of" due process. 408 U.S. 471, 482 (1972). District courts in this circuit have often found that this principle extends to noncitizens who have overstayed their visa. See Orozco-Salazar v. Warden, No. 26-4555, 2026 WL 2497334, at *3 (C.D. Cal. Aug. 25, 2026) (collecting cases); Tello Vazquez v. Mullin, No. 26-2039, 2026 WL 1911507, at *2 (W.D. Wash. July 2, 2026) ("The Government could have detained Petitioner at any time after the expiration of his visa in 2021 but did not do so until years later, after Petitioner

developed significant ties to the United States. Petitioner's interest in maintaining his liberty is therefore strong, in the absence of evidence that he is a flight risk or a danger to the community.").

To determine what procedures are constitutionally required to protect a liberty interest, courts apply the three-part test established in Mathews v. Eldridge, 424 U.S. 319, 335 (1976): (1) the private interest affected by the official action; (2) the risk of erroneous deprivation through the procedures used and the probable value of additional or substitute procedural safeguards; and (3) the Government's interest, including the fiscal and administrative burdens of additional procedural requirements. The Ninth Circuit has observed that Mathews is "a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (citations omitted).

The first Mathews factor strongly favors Petitioner. His confinement deprived him of physical freedom and interrupted the family and community life described in the Petition and supporting exhibits. His marriage, known residence, and pending immigration filings give concrete content to that interest. See Petition ¶¶ 14-17, 21; Marriage Certificate at 2; Immigration Records at 5, 14-19.

The Court recognizes the limitations on that interest. Petitioner overstayed his admission; the IJ found that he missed a filing deadline and ordered removal; and neither marriage nor a pending I-130 petition guarantees relief. His detention also has lasted weeks, not the prolonged period at issue in some immigration habeas cases. But while these considerations prevent treating his liberty as an entitlement to remain indefinitely in the United States, they do not diminish physical freedom to an interest that can be displaced without examining what process was feasible and required.

The second factor also favors Petitioner. On the undisputed account, ICE confined him without advance notice of the reasons custody was considered necessary, disclosure of supporting evidence, or neutral consideration of flight risk, danger, and alternatives. See Petition ¶ 20. His removability established a basis for proceedings and provided custody authority under the statute. It did not answer whether immediate confinement was necessary in his individual circumstances. Advance notice and a meaningful opportunity to respond before a neutral decisionmaker would have permitted consideration of Petitioner's known residence, counsel, family ties, and attempts at administrative relief. Those facts could support appearance and effective supervision outside detention. The same procedure could have tested contrary evidence, including the missed immigration filing deadline and the August 21 arrest.

An ordinary § 1226(a) hearing is a meaningful safeguard, and the Court does not presume otherwise. Rodriguez Diaz upheld that statutory framework, including the noncitizen's burden at an ordinary custody hearing, and rejected a claimed entitlement to a second hearing with a shifted burden. See 53 F.4th at 1207-13. But that decision did not foreclose every as-applied challenge. See id. at 1213. Petitioner challenges the timing of his initial loss of established liberty on a record containing no neutral custody determination. The availability of later process does not, without more, establish that postponing process was constitutionally sufficient here.

As to the third factor, the Government has substantial interests in enforcing immigration law, ensuring appearance, protecting the community, and avoiding unnecessary administrative burdens. Those interests carry weight in this context. See id. at 1206-07. The Court therefore does not treat the civil character of immigration detention as eliminating the public interest in confinement or assume that arranging advance review imposes no cost.

Even so, the third factor slightly favors Petitioner on this record. DHS initiated proceedings with knowledge of his residence more than four months before detention. Respondents supply no evidence that advance notice would have prompted flight, that an emergency required immediate immigration confinement, or that some other circumstance made advance process impracticable. The local arrest could have led to new and material information. But Respondents have not identified that information, described the incident, or explained why it required detention before a neutral assessment could occur. Nor have they connected the IJ's earlier abandonment ruling to an immediate custody need.

Respondents' objection that an IJ lacks authority to conduct a pre-deprivation hearing identifies a limitation on a particular administrative regime. See Answer at 2-3. It does not establish that the Government's interest required Petitioner's immediate confinement without constitutionally adequate process. The remedy below does not enlarge an IJ's jurisdiction, prescribe regulations, or direct an IJ to conduct a proceeding outside lawful authority. The Court decides only whether Respondents may continue the detention challenged here.

Taken together, the Mathews factors favor Petitioner. His substantial interest in established physical liberty, the value of an opportunity to test the actual grounds for confinement, and the absence of a demonstrated need to defer that process outweigh the Government's asserted interests in proceeding as it did. Under these circumstances, due process required advance notice of the asserted grounds for detention and a meaningful opportunity to contest them before a neutral decisionmaker. Respondents afforded neither.

### C. Remedy

Immediate release is the appropriate remedy. The violation found here concerns the deprivation of Petitioner's established liberty without process that

should have come before confinement. Requiring him to remain detained for another seven (7) days while awaiting the hearing Respondents propose would extend that deprivation. Release restores the liberty of which he was unconstitutionally deprived.

Respondents argue that release is not a remedy for an unlawful arrest. See Answer at 3-4. The Court does not grant relief for that reason. Petitioner challenges the constitutional adequacy of the process supporting his present civil confinement, and the record identifies no intervening neutral custody determination providing an independent basis for continuing that confinement. On the violation and record before the Court, an order offering only later process would fail to restore the liberty wrongfully taken. Immediate release, rather a bond hearing, is warranted. See Jorge M.F. v. Jennings, 534 F. Supp. 3d 1050, 1055 (N.D. Cal. 2021)

Petitioner also requests an injunction forbidding any future detention. See Petition at 12. The Court declines to order that broader relief. Whether future detention would be lawful would depend on the facts, statutory authority, and procedures then presented. The present record does not warrant prescribing a burden of proof for all future custody proceedings or adjudicating circumstances that have not occurred. This denial is without prejudice to a challenge to any future detention.

Petitioner may seek fees and costs under the Equal Access to Justice Act through an appropriate application satisfying 28 U.S.C. § 2412. The Court does not determine entitlement or amount in this Order.

## III. ORDER

IT IS THEREFORE ORDERED that:

1. The Petition is **GRANTED** in part. Petitioner's detention challenged in this action violates the Due Process Clause of the Fifth Amendment for the reasons stated above.

2. Respondents shall immediately release Petitioner Calvin George Dixon (A# 256-048-733) from the immigration custody challenged in this action and return his personal belongings in their possession in connection with that custody.

3. Within three (3) days, Respondents shall file a status report confirming compliance with paragraph 2.

4. The request for a prospective injunction governing future detention is **DENIED** without prejudice.

5. Any application for fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, shall be filed in accordance with that statute.

Date: September 15, 2026

DOUGLAS F. McCORMICK
United States Magistrate Judge